Yes, good afternoon. Go right ahead. Thank you. May it please the court, my name is David Hutchinson of the Quindon Law Firm. I'm here on behalf of Plaintiff Appellant, Epicenter Loss Recovery LLC, whom I'll refer to as Epicenter. I'd like to reserve one minute for rebuttal, and I'll keep my mouth shut. Counsel, we're having trouble hearing you. Could you get closer to your microphone? Sure. You're going to have to keep your voice up, I think. Okay. Is that better? It's better, but if you drop your voice at all, we lose the last syllable in your words, so you're going to have to speak up. Okay. I'll try to speak up. Thank you. Thank you. I wanted to reserve one minute for rebuttal, and we'll keep an eye on the time. Yep. You know the basic outlines of this case. Now I want to highlight two points that I think underscore why the district court's dismissal order should be reversed as an abuse of discretion. Number one, Epicenter is severely prejudiced by the dismissal order in this case. While the dismissal order is styled as being without prejudice, it's effectively a dismissal with prejudice because the applicable statutes of limitations lapsed while the matter was pending in the trial court. Number two, Epicenter has not done any unreasonable delay in order to advance these proceedings. Epicenter has complied with every court order and has worked diligently to secure financing for arbitration and indeed proceeded to commence arbitration proceedings in the London Court of International Arbitration, which I may refer to as the LCIA. The court recognizes that dismissal of an action is a harsh penalty only to be imposed in extreme circumstances. Here, the district court abuses discretion by dismissing the case without the due consideration of the five factors that the district court is required to consider prior to dismissing an action. Well, we don't really know that, right? We don't know what was considered apart from the short order that we have. I mean, I think what we have said is that it's not necessarily error to fail to articulate each of those factors if we can divine from the record what happened. Isn't that correct? Well, that's correct, Your Honor. And basically, the standard is that if the court doesn't make explicit findings with respect to each of the five factors, then on appeal, this court looks at the record to determine whether any of the factors were dismissed. Could you repeat the last thing you said? Sorry, I missed the last thing you said. Yeah, so here, the court can affirm if it finds that there is sufficient evidence of four of the five factors or if there is strong support for three of the five factors. Here, none of those factors are strongly supported. And indeed, our position is that none of the factors are supported at all in favor of dismissal. Accordingly, the case should have been, the state should have remained in place and the dismissal order should not have been entered. So the five factors that we look through on this matter are articulated in the Malone v. U.S. Post Office case back in 1987. And they look at, number one, the expeditious litigation expeditiously, which I refer to as kind of the delay factor. The delay kind of runs through a number of these. Number two, we have the court's management of its docket as a factor. Number three, we have prejudice to the defendant, to the opposing party. Number four, we have the public interest in having cases disposed of on the merits. Number five, the court should look at whether there are less drastic sanctions available prior to dismissing the matter. What is the delay factor, number one? There is just no unreasonable delay here. If you look at the record in this case, it's clear that Epicenter was delayed. Well, but counselors, I understand that the reason you didn't proceed to arbitrate is because you said you needed to raise money, right? That's correct, your honor. And you filed this lawsuit. You knew that there was at least the possibility that you would need to arbitrate. So why does the fact that your client who filed the lawsuit in the first place needs to raise money, why is that a reasonable factor excusing any of the delay when there's no other reason that was proffered for not quickly going and filing for arbitration? Well, typically when the court looks at the unreasonable delay factor, there are issues that come up as far as whether the party was compliant with the court's orders, whether there was a substantial lapse of time, which typically is anywhere from two to five years, which is not met here. And also, I know that the district court's order, when it saved the proceedings for arbitration, did not set a deadline that Epicenter needs to get the arbitration commenced within three months or within six weeks. Indeed, the court asked for status reports from the parties on a quarterly basis, which you pay every three months. And so when you look at August 30th of 2019, which was nine months after the court initially paid the proceedings, the court said, and I would quote it here to say, at this time, the court is satisfied that plaintiff is diligently working to commence arbitration. It's on page 15 of the record. And at that point, it affirmed that the state remains in place in order that the parties can continue to receive quarterly status reports. How clear was it at the outset to follow up on Judge Bennett's question that Burford was bound by the arbitration clause? Well, I think this case involves a sort of complex series of contracts, and so I don't know that it was clear at the outset. Although, you know, we abide by the district court's determination that the arbitration clause was binding and that the case should be referred to arbitration. When did she make that ruling, counsel? When was that determined? That was January 14, 2019.  Correct. Okay. And so there's a hint in the briefing, and I don't want you to go outside the briefing. I'm not asking for that. But it seems like that is now perhaps there's a question about whether Burford's claim against Burford is arbitrable because of the signatory status. Is that fair? Am I gleaning that correctly from the record, or have I got that wrong? I think that's correct, Your Honor. It's fair to say that there's a question about whether the claims that Upper Center has asserted are properly subject to arbitration against Burford and Ganymede, or if they are something that will need to be resolved in the courts here. So that was the purpose of the stay, which is in the interest of having the case resolved or disposed upon the merits. And the question was really whether that is going to be the LCIA or if it's going to be in the courts here. If it's not arbitrable, that would be a decision for the arbitrators to make, right? Absolutely, Your Honor. So if they were to conclude that it's not arbitrable and Burford and you don't have to arbitrate the claim and you try to come back to court, you can't because the statute of limitations is wrong. That's correct. Counsel, on that point, wouldn't you have an argument under Arizona law that the period that you were under this obligation to arbitrate equitably told the statute? That's a possibility. That's something that has to be resolved in motion practice within the district court. It's unclear at this time how that would go and whether that would be viable. Do you know when the decision is going to come down? I don't. I know that the arbitration proceedings are ongoing. I will say that as the attorneys included in part of the record, they have said that before. They would allow the LCIA to proceed to decide whether it has jurisdiction over the claims. They would have some initial matters that they wanted to bring up first, such as the center posted bond to secure the cost of arbitration, which are quite substantial. And so there is not, as I'm aware, arbitrability in their jurisdiction over the claims. Counsel, did you want to save some time for rebuttal? Yes. All right. We'll hear from opposing counsel then. Thank you, Judge Kristen. Good afternoon. Good morning, Judge Bennett. And may it please the court. My name is Scott Martin. I represent Burford Capital and Gannon Media Investments, the Appleys in this matter. The district court handled this case fairly, patiently, and reasonably, and its judgment of dismissal should be affirmed. The parties are sophisticated commercial entities with extensive litigation experience. They agreed to arbitrate any claims in London. Instead, Epicenter brought this lawsuit in Arizona State Court in clear breach of the party's arbitration agreement. Can I stop you there? Forgive me for interrupting, but my understanding might be wrong. And if I've got this wrong, I want you to correct me. My understanding is that there's a question about when you say the parties agreed to arbitrate, who signed this agreement? I thought Burford had not signed it. Yes, it's correct that Burford is not a signatory. The district court's decision notes on ER 40 footnote 10 that Epicenter isn't challenging whether Burford, as a non-signatory, can enforce the arbitration provision. And for good reason. The alternative estoppel doctrine considers the relationship between the signatory and non-signatory. They have an alter ego claim as their first claim in this case. In any event, those issues aren't before the court now, because the only issue is whether the district court abused its considerable discretion in deciding to dismiss for failure to prosecute. I'm not suggesting we would revisit it, Mr. Martin. I'm not suggesting that at all. I am trying to figure out sort of where we are, because one of the things that we're looking at is whether or not there's going to be a decision on the merits. So to follow up with Judge Friedman's question, I'm concerned with arbitrability and whether that decision's really been made yet, or whether it may be revisited. Do you want to speak to that? Maybe it's beyond the scope of this record, but I can't find from this record, I'm not satisfied from this record that I've got an answer. So I'm happy to speak to that. I will note that the LCIA rules have a confidentiality obligation, and so I am to some extent limited in what I can say. What I can, however, say is Burford is not challenging the jurisdiction of the arbitral tribunal, and Epicenter has filed its statement with the arbitral panel. And if they were challenging jurisdiction, one imagines that they would have told the court that, since they asked the court to take judicial notice of the filings. So consistent with the confidentiality rules, I'm not sure that I can say more than that. Sure, and I'm not asking it to, truly not asking it to. We're looking at the record about what was before the district court at the time she made her ruling. Do you want to speak to it in that regard? Was she at a point where she knew what was going to be the outcome of the arbitrability decision? Sure. The subsequent filings, as we argued in our brief, are legally irrelevant, both because an abuse of discretion can't be based on material that only later was developed, and also because this court's dismissal cases for failure to prosecute state, once the delay has already occurred, it's too late to cure that by only then taking action that should have been undertaken before. Also, is there anything in this record to indicate that the district court ever gave the plaintiffs notice that if you don't file by X date, you're out? I mean, is there anything explicitly or implicitly which said to them, here's a hard date, and you better be careful because you're on the court if you don't file the arbitration which I've ordered you to file by X date? Sure, I think that there are two responses to that. The first is the district court did warn them that the court would not continue to stay this case indefinitely. That's ER 25. District judges say that all the time. That's not a warning. District judges say that all the time. It's not a warning I'm going to dismiss. In that case, my second response is the deadlines here were set by Epicenter. Epicenter repeatedly told the district court that it would commence arbitration by a particular time. In April 2019, it said within four months in response to the order to show calls. Was that before or after their lawyer withdrew and they had to find another lawyer? So the April assertion that they would file within four months was before. So their lawyer withdraws, their lawyer withdraws. We have changed circumstances. You have to find a lawyer. Lawyers cost money. Lawyers have conflicts. Then you have the question of finding funding to fund the arbitration. We know it's going to cost a lot of money to get lawyers in London. So one thing after another befalls them. And you have zero prejudice. So there are, I think, a couple of issues that I'd like to address, Milton, to your comment. The first is that even if the circumstances involving withdrawal of a lawyer were relevant, when they responded to the order to show calls saying— How can they not be relevant? How can they not be relevant? So it is not because this court has fairly held that financial circumstances or an inability to proceed financially is not, as a matter of law, an excuse for a plaintiff's delay. That's fine when you've got a trial coming up or you're in the middle of discovery. There was next to nothing for the district judge to do in this case. I get joint status reports all the time. It takes me five minutes to read them and two minutes to write a minute order granting or denying it. This district judge had to spend about three hours on this case. Period. So this court has addressed the amount of additional work that is necessary to satisfy the factors that the court has laid out. And has not required particularly onerous efforts. The point was sufficient to satisfy the district court's need to manage the stocket element that the case was languishing out there. Languishing where? Languishing where? It's not languishing before the district judge. He doesn't have to do anything with it. Well, the case was stayed. It's still on the docket. Oh, I've got loads of cases on my docket. I've got loads of cases on my docket that are stayed for various reasons. They don't even appear on your six-month list if they're stayed. So if I could take a different approach to that question. The district court, when it initially granted the motion to compel arbitration, could have dismissed the case outright at that time. There's no requirement that the court stay. It's within the court's discretion just to dismiss it outright. Instead, the court gave every benefit of the doubt to Epicenter and granted them a stay. And that was rewarded, as it were, by Epicenter continually telling the district court that it was going to file. It's going to file. It's coming. We're on the verge. And never doing it before the court dismissed. If I could briefly come back to the question of prejudice, I think there is serious prejudice here. As an initial matter, the delay itself gives rise to presumed prejudice. So there's no requirement of actual prejudice. But the prejudice here is there's a contractual right to arbitrate. And we know under the FAA that arbitration is designed to be an expeditious process. And Burford and Genmead have been deprived of that right by having to litigate this case before the district court. Well, initially in state court, then removed to federal court. And we're still here arguing about a case that should never have been in either the state or the federal system. It should have been before the LCIA at the outset. Mr. Martin, your client removed to federal court, right? That's correct. Okay. So that doesn't seem like a. And there is this lingering concern about is it going to be arbitrable or not? I think everybody, certainly the parties here at this point aren't disputing that that's a decision to be made by the arbitrators. Right. I believe. Excuse me. Sorry. I had an echo. I believe we are are disputing it again without going into confidential materials. I would suggest that if the other side actually had challenged the authority of the panel, they would come out and say we did so in our statement that we filed with the LCIA. I appreciate that. I think Judge Bennett has one more question. Your time's about up. So let me just defer to my colleague here. Okay. So if you're right on that point, that the arbitrators are going to proceed to the merits, then even were we to reverse for the state in effect or for the judge to reconsider the reasons in his order, other than the extra cost in this case, there's no possible additional prejudice to you because there's never going to be another lawsuit because everything's going to be determined in the arbitration. Do I have that right? I don't believe so. And I think there are two responses. One of them is independent of any prejudice to Burford, which this court has held is not a requirement for dismissal for failure to prosecute. This court has said that the ability to dismiss for failure to prosecute is designed to, quote, preserve the district court's power to manage their dockets without being subject to endless, vexatious noncompliance. That was in Furvick. The court also said, quote, allowing the plaintiff rather than the court to control the pace of the docket is an evil to be avoided by the ability to dismiss for failure to prosecute. So in the presence of prejudice, the district court shouldn't be forced to reevaluate this case based on some theory that perhaps it will never come back. Mr. Martin, we've taken you considerably over your allotted time. Could you please wrap up? Yes. In any event, having a case pending against Burford on the docket is something that they should not have to sustain. So I'd recommend or suggest that the court should affirm the judgment law. Thank you. Thank you. Counsel, you have another minute. Go right ahead. Just to follow up on some of the comments made by opposing counsel, and particularly I think what brings through here is that there fundamentally is no unreasonable delay here. When counsel talks about there's presumed prejudice, well, that's only where there's an unreasonable delay. And to the extent that he tried to characterize it as, well, Epicenter have been saying for a year this is about to happen, that's just not true. In the April 2019 status report, former counsel for Epicenter did say it expected arbitration to commence in the next, I think, three months. But then after there was the will to show cause and the district court at the end of August 2019 said it was satisfied that plaintiff was commencing arbitration or diligently working to commence arbitration, there were two additional status reports. And I note in the response to the will to show cause, Epicenter said it expected to have funding to proceed with arbitration by the end of October. Then you have the November status report where Epicenter reported that it had retained counsel in London and they're putting together the papers to commence. And then in the January 2020 status report, Epicenter represented to the court that it was on the verge of commencing arbitration proceedings, which were in fact filed two weeks later. So without having any notice from the court that it was considering drastic sanction of dismissing the case, Epicenter has been materially prejudiced by this by being foreclosed of being able to get a disposition on the merits of its claims in the event that the arbitrators determine that they don't have jurisdiction over Epicenter's claims. Thank you for your argument, counsel. Thank you both for your arguments. We'll take this case under advisement.
judges: Christen, Friedman, Bennett